1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6  NICHOLAS MYERS

7

8                                    Plaintiff,

9  vs.

10 CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,

11                                   Defendant.

No. 1:14-cv-3171-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

12      BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No 21, 24.)

13 Plaintiff is represented by D. James Tree. Defendant is represented by Heather L. Griffith. The

14 Court has reviewed the administrative record and the parties' briefing. For the reasons discussed

15 below, the Court **GRANTS** Plaintiff's motion (**ECF No. 21**) and **DENIES** Defendant's motion.

16 (**ECF No. 24**.)

17

18                              **JURISDICTION**

19      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

20                          **STANDARD OF REVIEW**

21      A district court's review of a final decision of the Commissioner of Social Security is

22 governed by 42 U.S.C. § 405(g). The scope of review under § 405g) is limited; the Commissioner's

23 decision will be disturbed "only if it is not supported by substantial evidence or is based on legal

24 error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial

25 evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a

26 conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence

27

equate to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). if the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment is as severe, or more severe, than one of the listed impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.92(d).

At step four, the Commissioner considers whether, in view of the claimant's residual functional capacity (RFC), the claimant is capable of performing work he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1063, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 415.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

Plaintiff protectively filed for supplemental security income (SSI) and disability income benefits (DIB) on June 4, 2010. (Tr. 264.) Plaintiff alleged disability beginning December 5, 2008. (Tr. 43, 264.) The application was denied initially and on reconsideration. (Tr. 146, 150, 154, 158.) Plaintiff appeared at a hearing before an administrative law judge on January 23, 2013. (Tr. 42-109.) The ALJ issued an unfavorable decision on March 28, 2013. (Tr. 20-32.) On September 17, 2014, the Appeals Council denied review. (Tr. 1.)

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 5, 2008, the alleged onset date. (Tr. 22.) At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spines; status post right shoulder tendon tear; depression; and a cognitive disorder secondary to a remote history of a subdural hematoma. (Tr. 22.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Tr. 23.) The ALJ found Plaintiff not entirely credible and determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally push and/or pull with his upper right extremity. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He is limited to frequent reaching with his right upper extremity, but for no longer than 15 minutes an occurrence. He must avoid concentrated exposure to vibration and hazards such as dangerous machinery and unprotected heights. He must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. He must avoid concentrated exposure to noise without protective ear gear. He can perform simple, routine tasks. He is limited to occasional contact with the public for work related tasks, but incidental contact with the public is not precluded. He is limited to occasional changes in the workplace environment.

(Tr. 25-29.) At step four, the ALJ found Plaintiff is unable to perform past relevant work. (Tr. 30.) At step five, relying on a vocational expert's testimony, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including parking lot cashier, office helper, and housekeeping cleaner. (Tr. 31.) Thus, the ALJ concluded Plaintiff was not disabled from the alleged onset date, December 5, 2008, through the date of the decision. (Tr. 32.)

**ISSUES**

Plaintiff raises three issues for review:

1.      Did the ALJ err in finding Plaintiff's symptom testimony less than fully credible?

2.      Did the ALJ improperly reject the opinion of Dr. Bambara?

3.      Did the ALJ improperly reject portions of the opinion of Dr. Billings?

**DISCUSSION**

**1.      Credibility**

Plaintiff argues the ALJ erred in rejecting Plaintiff's testimony. (ECF No. 21 at 7-12.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning

the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering.[1] *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ "must specifically identify the testimony she or he finds not to be credible and

---

[1] Defendant argues, "Agency rules do not require 'clear and convincing reasons' [] and courts must apply the extremely deferential 'substantial evidence' standard of review prescribed by Congress, 42 U.S.C. § 405(g), which does not require that an ALJ's reasons be especially compelling or convincing." (ECF No. 24 at 5 n.1.) This argument is without merit. A long line of cases establish "clear and convincing reasons" as the requisite basis for a negative credibility finding. *E.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *Burrell*, 775 F.3d at 1136-37; *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan*, 169 F.3d at 599;  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivani*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984).

must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms are not credible. (Tr. 26.) The ALJ gave a four reasons for the credibility determination. (Tr. 26-29.)

First, the ALJ found that Plaintiff's independent daily activities and social interaction are inconsistent with his allegations of disabling functional limitations. (Tr. 26.) Daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Fair*, 885 F.2d at 603. The ALJ summarized Plaintiff's testimony about pain and limitations and listed Plaintiff's reported complaints submitted in connection with his application. (Tr. 25-26.) The ALJ cited numerous activities reported throughout the record and noted Plaintiff is independent and "gets around" as necessary. (Tr. 23-24.) For example, in March 2010, Plaintiff was described as a runner who had been running more than a mile a day. (Tr. 701.) Plaintiff reported caring for seven dogs and five cats on a daily basis in May 2010 and eight dogs in April 2011. (Tr. 526, 566.) He liked paperwork and thought he would be good at an outdoor job involving nature. (Tr. 555-56.) In July 2010, Plaintiff reported daily activities included driving, walking, paperwork, answering phones, and computer use on the job. (Tr. 464.) He used the internet and cared for dogs in his spare time. (Tr. 464.) In August 2010, he had been doing "a lot more work at home with his back bending and movement" and had some increased pain as a result. (Tr. 695.) Plaintiff reported to Dr. Billings in April 2011that he could sweep, mop, polish furniture, vacuum, shop, cook, do laundry, perform

household maintenance, drive, and complete his personal grooming. He listed his hobbies as riding motorcycles and his animals. (Tr. 526.) The ALJ also observed Plaintiff engaged in social activities, there is no indication of any problem interacting with is providers, and he was also polite and cooperative with good eye contact on mental status exams. (Tr. 24, 526, 528, 1158.)

Plaintiff argues this is not specific enough to be legally sufficient. (ECF No. 21 at 9, ECF No. 25 at 4-5.) In the case cited by Plaintiff, *Brown-Hunter v. Colvin*, the ALJ gave no specific reasons for the credibility finding. 806 F.3d 487, 493-94 (9th Cir. 2015). Here, the ALJ gave a specific reason, cited the record, and provided some analysis. Although the evidence perhaps could have been interpreted differently, the court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. *See* 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). Plaintiff's daily activities were reasonably considered by the ALJ. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (approving ALJ's credibility finding based in part on the claimant's active lifestyle involving cooking, cleaning, caring for pets, and driving to appointments). As a result, the ALJ properly relied on Plaintiff's activities as part of the credibility determination.

Second, the ALJ determined the medical evidence does not substantiate Plaintiff's allegations of disabling limitations. (Tr. 26-29.) An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell*, 947 F.2d at 346-47; *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p. Minimal objective evidence is a factor which

may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ made a detailed summary of the medical and psychological evidence. (Tr. 26-29.) The ALJ pointed out there was no significant change or deterioration in Plaintiff's physical condition at the point of Plaintiff's alleged onset date in December 2008. (Tr. 27.) Notably, Plaintiff reported in July 2011 that he could perform most major physical activities and that he was trying to qualify for Department of Social and Health Services benefits based on his seizure disorder and mental health issues. (Tr. 28, 637.) A treating provider, Dr. Thysell, thought Plaintiff could be released to light-duty work if available in December 2012, and opined Plaintiff seemed like he could work with some restrictions in January 2013. (Tr. 28, 895-96.)

With respect to Plaintiff's mental health, Dr. Billings opined that the majority of his intellectual and academic abilities were in the average range in April 2011. (Tr. 28, 530-32.) He had some mild brain impairment on intellectual testing. (Tr. 28, 533.) He spoke clearly and made good eye contact. (Tr. 28, 528.) In June 2011, Ms. Chavez, a mental health counselor, noted Plaintiff reported mood swings since his remote head injury[2] but denied the need for mental health services. (Tr. 29, 627.) The provider thought an antidepressant would help decrease depression and stabilize mood swings. (Tr. 29, 633.) In August 2011, his depression was medically stable.

---

[2] Plaintiff sustained a head injury in a motorcycle accident in 1986 while serving in the Marines. A subdural hematoma was removed via surgery and Plaintiff initially made a satisfactory recover. (Tr. 396.) Plaintiff reported he was eventually released from the Marines due to seizures arising from the head injury. (Tr. 526, 627.) His seizures were reportedly well-controlled with medication in June 2011. (Tr. 986.)

(Tr. 29, 944.) The ALJ concluded the evidence does not reflect any continuous or expected 12-month period of disabling physical or mental health symptoms. (Tr. 29.) The ALJ's interpretation of the evidence is reasonable and this is therefore a clear and convincing reason supporting the ALJ's credibility determination.

Plaintiff again argues the ALJ's explanation is inadequate and asserts the ALJ's "failure to make links" between the ALJ's discussion of the medical evidence and the ALJ's discussion of Plaintiff's testimony is reversible error. (ECF No. 21 at 9.) Plaintiff cites S.S.R 96-7p which provides:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

S.S.R. 96-7p at *2. The court concludes the ALJ met this standard. It is clear that the ALJ found the weight of the evidence does not support Plaintiff's claims of disabling symptoms. It does not take any great inference or leap of understanding to recognize that, for example, Plaintiff's indication that he could perform most physical activities and his doctor's opinion that he could perform light work is inconsistent with testimony that he is unable to work due to left sided paralysis and weakness from head to toe and that he had to lay down due to severe headaches throughout the day. (Tr. 25-26, 28, 637, 895-96, 1131-36, 1144.) Similarly, it seems relatively apparent that Plaintiff's allegations of memory problems and difficulty speaking were offset by, for example, Dr. Billings' findings that Plaintiff spoke clearly and made good eye contact, and his WMS III scores showed generally average memory. (Tr.25, 28, 28, 528, 530.) As a result, the ALJ's reason is sufficiently specific to conclude the ALJ did not arbitrarily discount Plaintiff's testimony as inconsistent with the medical evidence. *See Bunnell*, 947 F.3d at 345-46.

1    Third, the ALJ found the record contains inconsistencies that reduce Plaintiff's credibility.

2   (Tr. 29.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility

3   evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ noted Plaintiff testified

4   he stopped working in December 2008 due to his medical condition, but in February 2009 he

5   reported to Dr. Henderson that he lost his job because of the economic downturn. (Tr. 29, 66, 393.)

6   An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly

7   disabling condition in making a credibility determination. *See Tommasetti v. Astrue*, 533 F.3d

8   1035, 1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended*

9   (Nov. 9, 2001). Plaintiff points out Dr. Henderson referenced a job at Steve Hahn Auto Supply,

10  which is not an employer listed in Plaintiff's work history. (ECF No. 21 at 10; Tr. 274, 290.)

11  Further, in April 2011, Dr. Billings noted Plaintiff's work history: "Mr. Myers was last employed

12  in November of 2010 at Mike Olsen Dodge. It was the second time that he was employed with

13  them. He was previously employed for approximately one year. He was laid off and told that he

14  was 'not able to perform the functions necessary for the job.'" (Tr. 525.) Dr. Bambara indicated in

15  May 2011 that Plaintiff "was laid-off from his job selling car parts in 11/2010 due to an inability

16  to perform all aspects of the job." (Tr. 647.) Plaintiff told a mental health counselor in June 2011

17  that he worked at a Dodge dealer from July 2010 to November 2010 and was "let go due to not

18  being able to perform." (Tr. 627-28.) In the context of the larger record, Plaintiff repeatedly stated

19  he was laid off or let go from his last job due to his condition. Dr. Henderson's error or

20  misstatement about the name of Plaintiff's employer calls into question the accuracy of her

21  statement regarding Plaintiff's departure from work. As a result, this "inconsistency" identified by

22  the ALJ is not supported by substantial evidence.

Another inconsistency cited by the ALJ is that Plaintiff testified in January 2013 that he had not looked for or applied for a job in two years, but the ALJ found "the evidence suggests otherwise."[3] (Tr. 29, 1130.) The ALJ points out Plaintiff applied for a job as a security guard and discussed vocational training and other options with a vocational rehabilitation counselor. (Tr. 29, 432, 839.) However, the application for a security guard position was in June 2010, well over two years before Plaintiff's hearing testimony. (Tr. 432.) Indeed, Plaintiff's application for that position was unsuccessful due to his medical condition. (Tr. 434.) This is not substantial evidence supporting the ALJ's reasoning. The ALJ also pointed out Plaintiff met with a vocational rehabilitation counselor in October 2011. (Tr. 839.) The counselor noted that Plaintiff "seemed frustrated after interviewing for jobs and learning that job applicants with fewer qualifications than him were hired instead of him." (Tr. 839.) Plaintiff notes the last record of an application for a job was in July 2011, 18 months before the hearing, when he reported a job interview a few weeks prior. (Tr. 847.) The court agrees with Plaintiff that the difference between 18 months and two years is a minor discrepancy and not reasonably indicative of a lack of forthrightness or credibility. Thus, the "inconsistency" cited by the ALJ is not convincing or supported by substantial evidence.[4]

---

[3] It is noted that Plaintiff was asked, "The last time – within the last two years have you applied for a job?" Plaintiff replied "No, sir." (Tr. 1130.) Plaintiff did not assert that he had not "looked for" a job in the last two years.

[4] As a policy matter, it seems inappropriate to penalize a claimant for looking for and applying for work. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from

1    The third inconsistency cited by the ALJ as evidence supporting a negative credibility

2   finding is that Plaintiff collected unemployment benefits from 2010-2011. (Tr. 29.) The ALJ found

3   collecting employment benefits indicated Plaintiff was "ready, able, and willing to work, which is

4   inconsistent with his claim of disabling physical and mental health impairments." (Tr. 29.) Receipt

5   of unemployment benefits may cast doubt on a claim of disability, as it shows that an applicant

6   holds himself out as capable of working. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014);

7   *Copeland v. Bowen,* 861 F.2d 536, 542 (9th Cir.1988). Notwithstanding, if the record does not

8   establish whether the claimant held himself out as available for full-time or part-time work, receipt

9   of unemployment benefits may not be inconsistent with disability allegations.[5] *Carmickle v.*

10

11

12

13  *maintaining* substantial gainful employment.") In this case, the evidence reflects that Plaintiff was

14  unable to procure work despite his efforts. The ALJ did not show how this undermines, rather than

15  supports, Plaintiff's claim for disability.

16  [5] Plaintiff cites Social Security Administration policy in support of the proposition that receipt of

17  unemployment benefits does not disqualify a claimant from a disability claim. (ECF No. 25 at 6-

18  7.) In 2010, the Social Security Administration instructed ALJs regarding the consideration of

19  unemployment benefits:

20

21       Receipt of unemployment benefits does not preclude the receipt of Social Security
         disability benefits. The receipt of unemployment benefits is only one of many
22       factors that must be considered in determining whether the claimant is disable. *See*
         20 CFR 404.1512(b) and 416.912(b). . . . [I]t is often uncertain whether we will
23       find a person who applies for unemployment benefits ultimately to be disabled
         under our rules, and our decisionmaking process can be quite lengthy. Therefore, it
24       is SSA's position that individuals need not choose between applying for
         unemployment insurance and Social Security disability benefits. . . . Often the
25       underlying circumstances will be of greater relevance than the mere application for
         and receipt of the benefits.
26

27

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

*Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). Plaintiff received unemployment benefits for the second quarter of 2010 through the third quarter of 2011. (Tr. 229-30.) The record does not address whether Plaintiff held himself out as capable of full-time work. As a result, this is not a clear and convincing reason supporting the credibility finding.

Lastly, the ALJ observed at the hearing that Plaintiff's responses and overall demeanor were not suggestive of a person who is experiencing disabling limitations. (Tr. 29.) An ALJ may properly consider personal observations of a claimant's presentation of symptoms at a hearing when it is inconsistent with the medical evidence and the claimant's own behavior at the hearing. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). However, the fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156–57 (9th Cir. 1975)).

Here, the ALJ noted Plaintiff was able to interact appropriately and to answer questions clearly and adequately despite his alleged severe pain and disabling mental health symptoms. (Tr. 29.) This is consistent with the medical record. Plaintiff was pleasant, calm and future focused in

---

Letter from Frank A. Cristaudo, Chief Administrative Law Judge, Soc. Sec. Admin., to All Administrative Law Judges (August 9, 2010), http://www.ssaconnect.com/tfiles/UC-2010.pdf. It is noted that while case law indicates deference is to be given to the Commissioner's interpretation of the regulations, *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell*, 947 F.2d at 346 n.3. However, Mr. Cristaudo's letter is not the same as a Social Security Ruling or other official statement of policy.

July and August 2012. (Tr. 925, 940.) He was polite with good eye contact in August 2011. (Tr. 841.) Dr. Billings found Plaintiff to be cooperative and friendly on exam in April 2011. (Tr. 528.) The fact that Plaintiff was able to interact appropriately and answer questions clearly at the hearing is not inconsistent with his behavior throughout the record. As a result, there is no "sit and squirm" inconsistency that reflects negatively on Plaintiff's credibility. *See Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). Additionally, Dr. Billings found, "Mr. Myers was able to cover-up his difficulties to the casual observer in his daily functioning." (Tr. 533.) This suggests that the ALJ's observations over the course of a hearing are insufficient to assess Plaintiff's mental health difficulties.

Therefore, while the "inclusion of the ALJ's personal observations does not render the decision improper," neither does it support the negative credibility finding in this case. *Morgan*, 169 F.3d at 600 (citations omitted). Additionally, while some of the inconsistencies cited by the ALJ were not supported by substantial evidence, the ALJ cited other specific, clear and convincing reasons which are properly supported. The remaining reasoning and ultimate credibility finding is supported by substantial evidence, so any error in the credibility finding is harmless. *See Carmickle*, 533 F.3d at 1162-63. As a result, the credibility finding is legally sufficient.

## 2.    Psychological Opinions

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that

are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

### a.    Dr. Billings

Plaintiff argues the ALJ erred by giving little weight to portions of Dr. Billings' opinion. (ECF No. 21 at 18-20.) Dr. Billings completed a "Neuropsychological Academic Intellectual Evaluation" in April 2011. (Tr. 524-34.) Dr. Billings diagnosed major depressive disorder, recurrent and moderate cognitive disorder due to brain injury. (Tr. 534.) Dr. Billings administered psychological testing and found Plaintiff was reluctant to admit having emotional difficulties; was cooperative and friendly though his affect was depressed; appeared able to focus and concentrate on the tasks at hand; and had generally average memory, intellectual and academic abilities. (Tr. 527-32.) Dr. Billings also found Plaintiff has a mild level of brain impairment due to his past injury; he has a moderate level of untreated depression; he is able to cover up his difficulties in daily functioning; and his ability to solve problems within a time restriction is slowed. (Tr. 532-33.) She opined, "Mr. Myers is likely to have difficulty in an environment which involves close supervision, time restraints, and high stress." (Tr. 533.)

The ALJ found Dr. Billings' neuropsychological opinion to be consistent with Plaintiff's performance on neuropsychological and mental status exams, the opinions of the reviewing psychologists, Drs. Gollogly and Donahue, with the DSHS assessment of Ms. Chavez, and with Plaintiff's independent daily activities and social functioning. (Tr. 30.) However, the ALJ gave

little weight to the portion of Dr. Billings' assessment indicating Plaintiff is unable to sustain the mental requirements of work due to problems working in an environment involving close supervision, time restraints, and high stress. (Tr. 30.) The ALJ pointed out the RFC limits Plaintiff to unskilled work involving only occasional public contact and workplace change, but concluded the evidence is not consistent with more severe limitations. (Tr. 30.) In other words, the ALJ rejected Dr. Billings' finding that Plaintiff is likely to have difficulty in an environment which involves close supervision, time restraints, and high stress because the ALJ determined those limitations are not consistent with the evidence.

It is insufficient for the ALJ to reject the opinion of a treating or examining physician by merely stating, without more, that there is a lack of objective medical findings in the record to support or that it is inconsistent with other evidence in the record. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Id.* at 421-22; *see also Orn*, 495 F.3d at 632; *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ must not substitute his medical judgment for a doctor's. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). The ALJ otherwise credited the opinion, yet identified one statement as not consistent with other evidence in the record without any analysis, examples, or other explanation. As a result, the ALJ's rejection of Dr. Billings' statement is inadequate.

Defendant asserts the ALJ's recitation of the evidence and reference to mental health treatment history, performance on mental status exams, and daily activities reasonably satisfies the ALJ's requirement of specificity. (ECF No. 21 at 15.) However, it is not adequate for the ALJ to list general reasons and leave it to the reader to refer back to the summary of evidence to pick out

inconsistencies and guess what evidence supports the ALJ's conclusions.[6] The court may make inferences from the ALJ's discussion of the evidence, if the inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). While the court may make reasonable inferences from the ALJ's discussion of the evidence, the ALJ must actually discuss rather than simply list the evidence in order for those inferences to be drawn. If the ALJ can single out one statement from a medical opinion and reject it, it seems reasonable that the ALJ can also be expected to identify the specific evidence found to be contradictory to that statement. Because the ALJ did not provide a specific, legitimate reason supported by substantial evidence for rejecting Dr. Billings' opinion, the opinion was not properly rejected by the ALJ and the ALJ erred.

### b.    Dr. Bambara

Plaintiff argues the ALJ erred in rejecting the opinion of Dr. Bambara, a treating psychologist.[7] (ECF No. 21 at 12-21.) Dr. Bambara assessed and treated Plaintiff between June

---

[6] Defendant argues one way an ALJ can give specific, legitimate reasons for rejecting medical opinions is by summarizing the conflicting evidence in detail and interpreting it. (ECF No. 24 at 16.) Defendant cites *Magallanes v. Bowen* which provides: "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." 881 F.2d 747, 751 (9th Cir. 1989) (citing *Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir. 1986)). The problem here is that the ALJ summarized the facts but did not state an "interpretation thereof" in a meaningful way.

[7] Plaintiff asserts the only contradictory opinions in the record are those from the non-examining state agency psychologists. (ECF No. 21 at 15.) Plaintiff suggests *Lester* indicates a non-examining medical opinion cannot be considered a contradictory opinion for purposes of determining the

2011 and November 2011. (Tr. 831-32, 836-37, 846-48, 849-50, 984-89.) In February 2012, Dr. Bambara completed a Mental Residual Functional Capacity Assessment form. (Tr. 812-14.) Dr. Bambara assessed nine marked and three severe limitations.[8] (Tr. 812-14.) Dr. Bambara opined that Plaintiff is severely limited in the ability to maintain attention and concentration for an extended period; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to travel in unfamiliar places or use public transportation. (Tr. 812-14.) Dr. Bambara opined, "It is likely that challenges with language, attention, processing speed, memory, and pathfinding difficulties could impact work performance." (Tr. 814.)

---

applicable standard in reviewing the ALJ's reasons for rejecting a medical opinion – clear and convincing or specific and legitimate. (ECF No. 21 at 15, citing 81 F.3d at 831.) However, *Lester* states only that a nonexamining physician opinion cannot by itself constitute substantial evidence that "justifies the rejection of the opinion" of a treating or examining physician. *Id. Lester* does not indicate that a nonexamining medical opinion cannot be treated as a contradictory opinion for purposes of reviewing the ALJ's reasoning. *See id.* Since Plaintiff admits the state reviewing psychological opinions contradict Dr. Bambara's opinion, the ALJ was required to cite specific, legitimate reasons supported by substantial evidence to justify rejection of Dr. Bambara's findings. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Andrews*, 53 F.3d at 1043.

[8] The form completed by Dr. Bambara defines "markedly limited" as, "Very significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work day." (Tr. 812.) "Severely limited" is defined as, "Inability to perform one or more basic work-related activities." (Tr. 812.)

The ALJ gave limited weight to Dr. Bambara's opinion for several reasons: the claimant's mental health treatment history; his performance on mental status examinations; and his independent daily activities. (Tr. 30.) The ALJ also noted Dr. Bambara had seen Plaintiff "only five times" and found the assessment was based "in large part" on Plaintiff's not entirely credible self-report. (Tr. 30.)

First, the fact that Dr. Bambara had seen Plaintiff only five times is not a legitimate reason for rejecting the opinion. Although the longer and more often a treating physician has seen a claimant a factor to be considered in weighing the medical evidence, *see* 20 C.F.R. 404.1527(c)(2)(i), in this case Dr. Bambara's opinion is the only treating psychological opinion in the record. Generally, more weight is given to a treating source than to an examining or reviewing source. *Id.* The ALJ assigned significant weight to the assessments of Dr. Gollogly and Dr. Donahue, neither of whom treated, examined, or even met Plaintiff. Similarly, Dr. Billings saw Plaintiff only one time, yet the ALJ gave weight to most of Dr. Billings' opinion. As a result, the fact that Dr. Bambara saw Plaintiff "only" five times is not a specific, legitimate reason for rejecting her opinion.

The ALJ also rejected Dr. Bambara's opinion because it is based on Plaintiff's less than credible self-report. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 601; *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008). Plaintiff argues Dr. Bambara's opinion was based on her review of Dr. Billings' findings and her personal observation during Plaintiff's five

visits in addition to Plaintiff's self-report. (ECF No. 21 at 17.) Defendant asserts Plaintiff's argument is an alternate interpretation of the evidence which is insufficient to justify overturning the ALJ's decision. (ECF No. 24 at 17.) Here, as in *Ghanim*, the ALJ offered no basis for his conclusion that Dr. Bambara's opinion was based primarily on Plaintiff's self-report. Contrary to Defendant's argument, this is not a reason that turns on the ALJ's interpretation of the evidence since the ALJ did discuss the basis for the conclusion. As a result, this reason is not a specific, legitimate reason supported by substantial evidence which reasonably justifies rejecting Dr. Bambara's opinion.

Additionally, the ALJ cited Plaintiff's mental health treatment history,[9] his performance on mental status examinations, and his independent daily activities as reasons for rejecting Dr. Bambara's opinion. (Tr. 30.) For the same reasons discussed *supra* regarding Dr. Billings' opinion, this sweeping statement with no further analysis and no application of the record to the reasoning is insufficient as a matter of law. As a result, the ALJ's rejection of Dr. Bambara's opinion is based on error.

---

[9] It is also noted that Plaintiff's mental health treatment history may not even be a legitimate reason for rejecting a psychological opinion. Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). It seems even less appropriate to question the validity of a psychological opinion finding significant mental health limitations because the claimant has not previously sought mental health treatment.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error. The matter must be remanded for reconsideration of the psychological opinion evidence. On remand, the ALJ should provide legally sufficient reasons for the weight assigned to the opinion evidence. The ALJ also should consider whether the testimony of a psychological expert is appropriate and take additional testimony as is necessary.

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(ECF No. 21)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.      Defendant's Motion for Summary Judgment **(ECF No. 24)** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED March 31, 2016

　_s/Fred Van Sickle_　
Fred Van Sickle
Senior United States District Judge